UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHARLES N. DIORIO, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 18-12315-LTS |
| MICHAEL RODRIGUES, | ) ) ) | |
| Respondent. | ) ) ) | |

MEMORANDUM AND ORDER ON PETITION
FOR WRIT OF HABEAS CORPUS (DOC. NO. 9)

September 18, 2019

SOROKIN, J.

Charles N. Diorio, a prisoner at the Massachusetts Correctional Institution in Concord, Massachusetts, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges the admission of evidence he alleges was obtained in violation of his Fourth Amendment rights, the admission of "other bad acts" evidence, and a state trial court ruling he says prevented him from allocuting at his sentencing. The respondent has opposed the petition. As explained below, Diorio's petition is DENIED.

I.  BACKGROUND

Following a jury trial, Diorio was convicted on December 18, 2013 of armed kidnapping, witness intimidation, carrying a firearm without a license, unlawfully possessing ammunition, and furnishing a false name to police. Commonwealth v. Diorio, 81 N.E.3d 825, *1 (Mass.

2017) (unpublished); Doc. No. 9 at 1;[1] S.A. at 1-3, 11.[2]  He was sentenced the next day to fifteen-to-twenty years in state prison, followed by another year in county jail.  Doc. No. 9 at 1; S.A. at 11.

The charges arose from a series of events that began on July 2, 2011 in Suffolk County and ended the next morning in Norfolk County.  The Massachusetts Appeals Court ("MAC") described the events as follows:

> Background.  [Diorio], who had an outstanding California parole warrant, used a series of aliases during his time in Massachusetts.  He lived in a rooming house in Chelsea, and between September, 2010, and May, 2011, dated the victim of the crimes that led to the present appeal.  The victim moved into an apartment in Braintree in January, 2011, and shortly thereafter bought a firearm at [Diorio]'s urging.  The victim ended their relationship in May, 2011, and returned to her apartment to discover that [Diorio] had removed all of his belongings, except for a pair of shoes.  She did not look for the firearm that [Diorio] had urged her to purchase.
>
> 1.  Events in Suffolk County.[3]  On the night of July 2, 2011, a resident-employee of the rooming house where [Diorio] lived in Chelsea saw [Diorio] holding a handgun outside of his room.  He told [Diorio], whom he knew by a different name, that he was going to call the police, and, while he was walking away, [Diorio] fired three shots at him, striking him once in the arm.  The victim of this shooting called the police, who responded quickly, recovered shell casings and a holster for a semiautomatic firearm, and spoke to a nearby witness who identified [Diorio] as a man who had walked by his vehicle while cocking a silver handgun.  Police recovered a live round of ammunition next to that car of the same type[4] as the shell casings found inside.  A different resident of the rooming house also recovered [Diorio]'s wallet, which was given to police and identified [Diorio] by his true name, Charles Diorio.
>
> 2.  Events in Norfolk County.  Around the time that Chelsea police were investigating the area around the rooming house shooting, [Diorio] arrived at his former girlfriend's apartment in Braintree.  When she answered the door, he forced his way in and was "agitated."  She testified that [Diorio] pointed the pistol that she

---

[1] Citations to documents on the Court's electronic docket reference the assigned docket number and the page number appearing in the ECF header at the top of each page.
[2] The respondent has filed a Supplemental Answer (cited as "S.A.") containing the state-court record in one bound volume.  Doc. No. 38.
[3] Footnote 3 to the MAC's decision says, "These events do not form the basis for the convictions at issue here, but they preceded in time the events that do."
[4] Footnote 4 to the MAC's decision says, "A 9 millimeter Winchester Luger."

> had purchased at her and told her that he had spent much time thinking about killing her. [Diorio] remained at the apartment, making her lie on the bed with him while keeping one arm around her neck and the other holding the pistol. He told her that he had "messed up" in Chelsea. [Diorio] eventually fell asleep, and the victim was able to escape and had a friend drive her to the Braintree police station. [Diorio] was later arrested while exiting the victim's apartment building, and inside the apartment police found a latex glove, the victim's pistol that she had seen [Diorio] possess, a fully loaded magazine not loaded into the firearm, and four additional loose bullets.

Diorio, 81 N.E.3d at 825, *1.

During a pretrial hearing the day before jury selection began, Diorio's counsel notified the trial court that Diorio "wishe[d] to make a statement to the jury . . . in the form of an opening statement." S.A. at Tab 4, p.64. The trial court denied the request. Id. Diorio did not testify, nor did he address the trial court during his sentencing hearing. See generally S.A. at Tabs 9, 11.

Diorio filed a timely notice of appeal. S.A. at 11. In his brief to the MAC, his counsel raised two issues: whether the evidence and the jury instructions at trial had constructively amended the witness intimidation charge; and whether Diorio's right to due process had been violated by the admission of evidence about the shooting in Suffolk County. S.A. at 29, 42-60. Diorio's appellate counsel included seven additional issues in his brief to the MAC "at [Diorio]'s insistence," pursuant to Commonwealth v. Moffett, 418 N.E.2d 585 (Mass. 1981). S.A. at 29. Those issues were: whether admission of the Suffolk County evidence denied Diorio his right to counsel; whether evidence of a photo array and the resulting identification were erroneously admitted; whether evidence seized from Diorio's room was found in an unlawful search and subject to exclusion; whether Diorio was denied his right to represent himself; whether evidence that Diorio was a fugitive from justice should have been excluded; whether Diorio's right to a fair trial was infringed by a police witness appearing in uniform; and whether the trial judge abused her discretion by permitting a juror to make an unsupervised telephone call. S.A. at 30-31, 61-74. Diorio submitted a pro se brief expanding on the Moffett claims. S.A. at 135-91.

3

The MAC affirmed in an unpublished decision on March 24, 2017, discussing and rejecting both challenges raised and endorsed by Diorio's appellate counsel. Diorio, 81 N.E.3d at 825, *2-3. Additionally, the MAC "considered" the seven Moffett claims "and reject[ed] each of them," "briefly address[ing] some of" them and finding the others did not merit discussion. Id. at 825, *3 & n.6.

Through the same appellate counsel, Diorio applied to the Supreme Judicial Court ("SJC") for further appellate review. S.A. at 341. In his application, he identified three "points as to which further appellate review [wa]s sought": 1) whether the warrantless seizure and search of Diorio's wallet were unconstitutional; 2) whether the admission of evidence regarding the Suffolk County events violated Diorio's right to a fair trial; and 3) whether the trial court had erred in prospectively denying Diorio the right to speak in mitigation of his sentence. S.A. at 353-63. The SJC denied Diorio's request for further review on September 14, 2017. Commonwealth v. Diorio, 94 N.E.3d 394 (Mass. 2017) (table). Diorio did not seek certiorari in the United States Supreme Court.

In December 2018, Diorio filed a timely federal habeas petition, claiming:

1) His Fourth Amendment rights were violated when the trial judge admitted evidence found inside a wallet recovered during a search of Diorio's room;

2) His Sixth Amendment rights were violated when the trial judge prohibited Diorio from allocuting at his sentencing; and

3) His Fifth and Fourteenth Amendment rights were violated when the trial judge admitted evidence "from a separate yet related indictment from another county."

Doc. No. 9 at 6-14.[5] Diorio's claims have been fully briefed and are ripe for disposition.

---

[5] The petition included several additional claims, which Diorio deleted in response to the Court's order finding Diorio had not exhausted them. Doc. No. 23; see also Doc. Nos. 22, 24.

II.     LEGAL STANDARDS

   A.    Procedural Default

A state prisoner is entitled to federal habeas relief only if he has exhausted his available remedies in state court. 28 U.S.C. § 2254(b); see O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999). Failure to exhaust may result in procedural default of federal claims for habeas purposes. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). Even where a petitioner has fairly presented his federal claims in state court, procedural default occurs if the state court refuses to address such claims on the merits because of "a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman, 501 U.S. at 729); accord Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010); see Martinez v. Ryan, 566 U.S. 1, 9 (2012) ("[A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule.").

Massachusetts law imposes "a routinely enforced, consistently applied contemporaneous objection rule." Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995); see Commonwealth v. Lavoie, 981 N.E.2d 192, 197 n.8 (Mass. 2013); Mass. R. Crim. P. 22. The rule is "firmly established and consistently followed," Martinez, 566 U.S. at 9, and the First Circuit repeatedly has held that it constitutes "an independent and adequate state procedural ground" barring federal habeas review. Janosky, 594 F.3d at 44.

A petitioner may obtain review of defaulted claims only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the[] claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; accord Martinez, 566 U.S. at 10; Janosky, 594 F.3d at 44. To

5

demonstrate cause sufficient to excuse default, a petitioner must prove "some objective factor external to the defense impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). "[I]neffective assistance of counsel, so severe that it violates the Sixth Amendment, may constitute cause to excuse a procedural default," but only if "the petitioner exhausted his ineffective assistance claim in state court." Janosky, 594 F.3d at 44 (citing Murray, 477 U.S. at 488-89). To show prejudice, a petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 168 (1982); accord Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994).

If a petitioner seeks to establish a "fundamental miscarriage of justice" as an alternative to showing cause and prejudice, he must demonstrate "actual innocence." See Schlup v. Delo, 513 U.S. 298, 324 (1995); Janosky, 594 F.3d at 46. This requires "new reliable evidence" that would make it more likely than not that "no reasonable juror would find [the petitioner] guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 538 (2006); Schlup, 513 U.S. at 324.

B. Merits Review

State court decisions merit substantial deference. A federal court may not grant a writ of habeas corpus unless it finds the state court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As the Supreme Court repeatedly has emphasized, this standard is "difficult to meet," and a habeas petitioner carries a heavy burden of proof. Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster,

563 U.S. 170, 181 (2011); see Burt v. Titlow, 571 U.S. 12, 19-20 (2013) (emphasizing the "formidable barrier" faced by a federal habeas petitioner).

If a state court's decision "was reasonable, it cannot be disturbed" on habeas review. Hardy v. Cross, 565 U.S. 65, 72 (2011) (per curiam); see Renico v. Lett, 559 U.S. 766, 779 (2010) (admonishing federal habeas courts not to "second-guess the reasonable decisions of state courts"). A federal court must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003); accord Teti v. Bender, 507 F.3d 50, 57 (1st Cir. 2007); see Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007) (discussing the "separate and exacting standard applicable to review of a state court's factual findings").

A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The state court is not required to cite, or even have an awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); cf. Richter, 562 U.S. at 100 (stating "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference).

For a habeas petitioner to prevail under this exacting standard, the state court judgment must contradict clearly established holdings of the Supreme Court, not merely law articulated by a lower federal court, and not dicta of any court. Williams, 529 U.S. at 404-05; accord Knowles v. Mirzayance, 556 U.S. 111, 122 (2009); see Marshall v. Rodgers, 569 U.S. 58, 64 (2013)

7

(warning against using circuit precedent to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced").

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. When making the "unreasonable application" inquiry, a federal habeas court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407. It cannot, however, include a decision by a state court not "to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Mirzayance, 556 U.S. at 122. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). Rather, relief is available only where a state court's "determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam) (emphasizing that a habeas court "may not overturn a state court decision . . . simply because the federal court disagrees with [it]"); Richter, 562 U.S. at 103 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement"). Put another way, relief under § 2254 is warranted only if a petitioner shows that the state court's rejection of his claim was "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible options." Sanna v. Dipaolo, 265 F.3d 1, 13 (1st Cir. 2001) (quotation marks omitted).

None of Diorio's claims entitles him to relief under these stringent standards.[6]

III. DISCUSSION

A. The Fourth Amendment

In his first claim, Diorio alleges that identification evidence found in his wallet at the Chelsea rooming house should have been excluded at trial, as the seizure and search of the wallet violated his Fourth Amendment rights. Doc. No. 9 at 6, 11; Doc. No. 31 at 5-18. He challenges the search of his room, arguing that the tenant who entered his room, found the wallet, and turned it over to a detective was acting as an agent of the police, as well as the search of his wallet, which he characterizes as a closed container. Doc. No. 31 at 5-18. According to Diorio, warrants were required to search both his room and his wallet. Id.

The MAC found that Diorio's challenge to the seizure and search of his wallet had "been waived," as it was "never raised before [his direct] appeal." Diorio, 81 N.E.3d at 825, *3. Consistent with the MAC's characterization, the state court docket lists no pretrial motion by Diorio in the Norfolk County case seeking to suppress either the wallet or its contents, or

---

[6] To the extent Diorio suggests in his briefs that this Court should apply a standard of review that is broader than what is described here, e.g., Doc. No. 50 at 3 (characterizing the Antiterrorism and Effective Death Penalty Act as having "enhanced the extent habeas corpus proceedings resemble federal appeals of state court determinations"), he misunderstands the legal principles governing federal courts' consideration of state prisoners' § 2254 petitions.

9

advancing any other Fourth Amendment challenge to evidence in that case.[7]  See generally S.A. at 3-10.  Nor does the trial transcript reflect any oral motion or objection by Diorio raising such an issue.  See generally id. at Tabs 4-10.

This Court is foreclosed from reviewing the merits of Diorio's Fourth Amendment challenge for two reasons.  First, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 494 (1976).  To obtain federal habeas review of a Fourth Amendment claim, a petitioner must make "an affirmative showing" of "the State's denial of a full and fair opportunity to present the claim."  Tart v. Massachusetts, 949 F.2d 490, 497 n.6 (1st Cir. 1991).

Diorio has not made such a showing here, despite the Court having noted this hurdle when ruling on the respondent's motion to dismiss Diorio's federal claims.  Doc. No. 22 at 6 n.4. In fact, he addressed this issue only in his amended reply brief, and then only with conclusory assertions that the state courts failed to hold a "meaningful suppression hearing," coupled with a vague promise that "[a] careful[] reading of [his] trial transcript and direct appeal, among other [unspecified] documents related to [his] case will show that [he] has met the burden outlined by" Stone.  Doc. No. 51 at 1-3.  But, the Court's review of the record in this case "discloses no intrinsic or systemic infirmity" preventing Diorio from litigating constitutional challenges to the seizure and search of his wallet, or to the use of its contents at trial.  Tart, 949 F.2d at 497 n.6. The state court record shows that Diorio never sought to suppress or otherwise challenge that

---

[7] A motion to suppress identification evidence in the Suffolk County case—challenging a photographic array as unnecessarily suggestive, but not attacking the seizure, search, or use of Diorio's wallet or its contents—was denied after a hearing.  S.A. at 256.

10

evidence, and nothing in the record suggests the Massachusetts courts in any way prevented him from doing so. In these circumstances, federal review of Diorio's Fourth Amendment claim is foreclosed.

Second, Diorio's failure to seek suppression of the wallet or its contents, or to otherwise object to the admission of such evidence at trial, renders any related federal claims procedurally defaulted. Janosky, 594 F.3d at 44. Thus, unless he can show cause and prejudice or demonstrate actual innocence, Diorio is not entitled to federal review of the defaulted claim. Schlup, 513 U.S. at 324; Coleman, 501 U.S. at 750.

Diorio, however, cites no "objective factor external to the defense" which caused his default, Murray, 477 U.S. at 488, nor does he advance another colorable basis upon which it might be excused.[8] To the extent he alleges his trial counsel was ineffective in this or any other regard, he has not exhausted any ineffectiveness claims in state court.[9] Janosky, 594 F.3d at 44. Similarly, he has not shown, and the record does not support a finding, that the admission of evidence about the wallet or the identification cards found therein "infect[ed] his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 168. Finally, Diorio has not presented "new reliable evidence" of his innocence. Schlup, 513 U.S. at 324. Under these circumstances, there is no basis for excusing his procedural default.

Accordingly, Diorio's Fourth Amendment claim does not merit habeas relief.[10]

---

[8] His general averment that the state court somehow denied him a full and fair chance to press this claim finds no support in the record and, thus, does not provide a basis to excuse his default.
[9] Diorio's briefing in many regards ignores the Court's prior orders defining the limited issues properly presented here. Doc. Nos. 22, 24; e.g., Doc. No. 31 at 9-10, 17, 20-24 (referencing the Confrontation Clause, the "rights to counsel and speech," and the standard for counsel ineffectiveness). Dioro may not use his briefing to expand his federal petition beyond the properly exhausted claims included in his petition and previously identified by the Court.
[10] Even if Diorio's Fourth Amendment claim were properly before this Court for review on its merits, the record contains a dearth of factual support for Diorio's characterization of the private

B.     Right to Allocute

Next, Diorio claims that his Sixth Amendment rights were violated when the trial court prohibited him "from allocuting and presenting mitigating remarks at [his] sentencing." Doc. No. 9 at 8; see S.A. at 68-70 (including this issue among those raised before the MAC pursuant to Moffett). He characterizes a pretrial ruling by the trial court denying his request to speak to the jury himself as part of the defense opening statement as "effectively impos[ing] a gag order on [him], at every stage of the proceeding," and he accuses the trial court of having "refused entirely to hear any mitigation" before imposing "a sentence at the highest end of the sentencing guidelines." Doc. No. 31 at 26-27.

In rejecting this and Diorio's other Moffett claims, the MAC explicitly acknowledged only the related challenge by Diorio that his "right to self-representation" had been violated when the trial court precluded him from making "a separate, additional opening statement after his counsel's." Diorio, 81 N.E.3d at 825, *3. Besides that, the MAC included the following footnote: "To the extent that we have not addressed other issues that have been raised by [Diorio], they have not been overlooked. We find nothing in them that requires discussion." Id. at 825, *3 n.6 (quotation marks omitted).

The MAC's rejection of Diorio's allocution claim, though expressed in summary fashion, was reasonable. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. Here, the record establishes that the ruling Diorio cites as having precluded him from addressing the state court in an effort to mitigate his sentence did

---

individual who actually found his wallet and turned it over to a detective as "an agent of the government" who acted under the "guidance" of police. E.g., Doc. No. 31 at 9.

no such thing. The entirety of the relevant exchange, which occurred during a pretrial motion hearing the day before jury selection began, was:

> [TRIAL COUNSEL]: And additionally, one other – before jury impanelment, Your Honor, my client, this is an issue he wants the court to – me to present that. [sic] He wishes to make a statement to the jury, Your Honor, in the form of an opening statement.
>
> [TRIAL COURT]: Right. He has counsel. He either testifies or he doesn't testify. But otherwise all his speaking is done through counsel.

S.A. at Tab 4, p.64. The record reflects no further appeals by Diorio, on his own or through counsel, for permission to address the jury or the trial court. In particular, Diorio never requested, let alone was denied, an opportunity to allocute at his sentencing hearing. See generally S.A. at Tab 11 (reflecting trial counsel spoke on Diorio's behalf but neither informed the trial court that Diorio wished to speak nor objected when the trial court began announcing its sentencing decision upon the completion of trial counsel's argument, without first asking Diorio if he wished to allocute). The pretrial ruling excerpted above cannot reasonably be read as having rendered futile a subsequent request by Diorio or his counsel regarding allocution at sentencing, thereby excusing Diorio's failure to make such a request, as Diorio urges.

Even assuming the record supported Diorio's view of this ruling—and it does not—Diorio has not identified the clearly established federal law such a ruling would have contravened. As the respondent correctly notes, the Supreme Court has not interpreted the Constitution as bestowing upon all criminal defendants a right to allocution. See Hill v. United States, 368 U.S. 424, 428 (1962) ("The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus."); Doc. No. 39 at 20-21 (citing cases). And, though the Federal Rules of Criminal Procedure require federal courts to "address the defendant personally in order to permit the defendant to speak" if he so chooses,

13

Fed. R. Crim. P. 32(i)(4)(A)(ii), those rules neither apply in state criminal proceedings, nor do they provide "clearly established federal law" for federal habeas purposes.

As such, Diorio's claim alleging a violation of his right to allocution fails to justify habeas relief both as a matter of fact and as a matter of law.

C.     Other Bad Acts

Finally, Diorio asserts a violation of his right to due process arising from "the Commonwealth of Massachusett[s]'s overreach causing prejudice and miscarriage of justice when evidence underlying eleven Suffolk County indictments . . . was allowed to be considered by the jury in the Norfolk County criminal case." Doc. No. 31 at 3.[11]

In finding the trial judge had not abused her discretion in admitting the challenged evidence, the MAC explained:

> Evidence relevant to a defendant's motive has long been recognized as admissible in Massachusetts, and it is within the [trial] judge's discretion to consider and weigh the probative value versus any prejudicial effect of the evidence. The evidence of the events that took place in Chelsea provided context for [Diorio]'s statements to his former girlfriend that he had 'messed up in Chelsea' and 'had to go.' It also provided the jury with evidence of [Diorio]'s motive behind kidnapping his former girlfriend, which was particularly relevant as it clarified that the kidnapping did not occur in a vacuum. The judge weighed the probative value of the evidence offered against its possible prejudicial effect, properly limited portions of it, and gave appropriate limiting instructions.
>
> In addition, the ballistics evidence recovered from Chelsea was particularly relevant in order to prove the firearm-based offenses at issue here. The firearm found in [Diorio]'s former girlfriend's apartment in Braintree matched bullet casings found in Chelsea, and as the firearm was not found on [Diorio]'s person nor was it registered to him, it was necessary to admit this evidence to establish [Diorio]'s possession of the weapon.

---

[11] In the same portion of his brief, Diorio also argues that the admission of evidence from Suffolk County operated to improperly consolidate the two cases "for trial before a single jury" and to deny him the right to counsel—claims not raised in his habeas petition and, therefore, not properly before this Court. Doc. No. 9 at 9. Furthermore, no improper consolidation claim was exhausted in state court, S.A. at 47-60, 358-61, and Diorio's claim of constructive denial of counsel was reasonably denied on its merits by the MAC, Diorio, 81 N.E.3d at 825, *3.

Diorio, 81 N.E.3d at 825, *2 (citations omitted).[12]

The MAC's holding was neither contrary to, nor an unreasonable application of, clearly established federal law. A Due Process challenge to a state trial court's evidentiary ruling triggers habeas relief only if "the state court's application of state law [was] 'so arbitrary or capricious as to constitute an independent due process . . . violation.'" Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). "[T]he category of infractions that violate fundamental fairness" has been defined "very narrowly" by the Supreme Court. Dowling v. United States, 493 U.S. 342, 352 (1990).[13] Moreover, the Supreme Court "has expressly declined to determine 'whether a state would violate the Due Process Clause if it permitted the use of prior crimes evidence to show propensity to commit a charged crime,'" and has not otherwise spoken "directly to the admission of prior bad acts evidence." Coningford, 640 F.3d at 484-85 (quoting Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991)).

This "absence of an on-point pronouncement from the Supreme Court leaves hanging by the slimmest of threads [Diorio]'s claim that the state court's admission of the [Suffolk County] evidence can be deemed an unreasonable application of the broader fair-trial principle." Id. at 485. Here, Diorio has summarily asserted—but the record does not establish—that the

---

[12] The trial record confirms that not all "prior bad acts" evidence from the events in Suffolk County was admitted. See S.A. at Tab 4, pp.18-36 (reflecting that, after hearing argument from both sides on cross-motions regarding this evidence, the trial court limited the scope of evidence about the shooting and an alleged carjacking in Chelsea and whether Diorio appeared drunk in Chelsea); see also id. at 36-64 (reflecting additional limitations placed on evidence regarding Diorio's prior record and parole status and the nature of Diorio's prior relationship with the victim).

[13] In Dowling, the Supreme Court found no Due Process violation where the other bad acts evidence related to a prior criminal charge of which the defendant had been acquitted. 493 U.S. at 353-54.

admission of the Suffolk County evidence "so infected [his] trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Having reviewed the record of Diorio's trial and considered the MAC's disposition of the claim, this Court reaches the same conclusion the First Circuit did when confronting a similar federal claim:

> Because the Supreme Court has not laid down a governing rule anent the admission of prior bad acts evidence, the broader fair-trial principle is the beacon by which we must steer. We need not linger long over this point; it is nose-on-the-face plain that the state court's approval of the introduction of the prior bad acts evidence in this case, whether or not an unarguably correct evidentiary ruling, was well within the universe of plausible evidentiary rulings. It was, therefore, not so arbitrary or capricious as to work a denial of the petitioner's constitutionally secured fair-trial right.

Coningford, 640 F.3d at 485. Because Diorio has not established an "extreme malfunction" of the justice system, Titlow, 571 U.S. at 20, his Due Process claim fails.

IV. CONCLUSION

For the foregoing reasons, Diorio's habeas petition is DENIED.[14]

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[14] Because "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue. As explained more fully above, the record does not support a finding that Diorio's Fourth Amendment challenge falls within the scope of federal habeas review, neither the facts nor the law support a meritorious claim related to Diorio's asserted right to speak at his sentencing, and the MAC reasonably evaluated Diorio's Due Process challenge to the admission of evidence from the Suffolk County case in his Norfolk County trial.